1
2
3
4

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

JUAN MANUEL CRUZADO-LAUREANO,

    Petitioner,

    v.

UNITED STATES OF AMERICA,

    Respondent.

Civil No. 3:15-CV-01930 (JAF)

5
6

## ORDER ON PETITION FOR WRIT OF ERROR CORAM NOBIS

7    "In federal courts, the maxim, 'if at first you don't succeed, try, try again' does not

8    apply." *In re Moncier*, 488 Fed. Appx. 57, 60 (6th Cir. 2012).  It is a maxim that

9    petitioner Juan Manuel Cruzado-Laureano ("Cruzado") has failed to accept.  On July 13,

10    2015, Cruzado petitioned the court under 28 U.S.C. § 1651(a) for a writ of error coram

11    nobis, which the First Circuit Court of Appeals has called the "criminal-law equivalent"

12    of a Hail Mary pass because, like the football tactic, it is "made in desperation at the end

13    of a game, with only a small chance of success."  *United States* v. *George*, 676 F.3d 249,

14    251 (1st Cir. 2012).  Like most desperate attempts, Cruzado's fails.  The facts and the law

15    clearly dictate the outcome, and the court must deny Cruzado's latest attempt to undo the

16    underlying judgment of conviction in *Cruzado-Laureano v. United States*, 3:01-cr-00690-

17    JAF-1.

18    "It suffices to say here that Cruzado, the former mayor of Vega Alta, Puerto Rico,

19    was convicted by a jury in June 2002 on charges of embezzlement, extortion, money

20    laundering and witness tampering stemming from conduct undertaken while he was in

21    office, including demanding kickbacks on municipal contracts."  *United States* v.

1   *Cruzado-Laureano*, 527 F.3d 231, 233 (1st Cir. 2008) (*Cruzado III*).   Over the next

2   thirteen-odd years, Cruzado and his lawyer, Alexander Zeno, Esq., have generated an

3   avalanche of related federal-court litigation.   We will briefly survey this history in order

4   to properly situate Cruzado's new petition.

5         Cruzado appealed the judgment of conviction three times in a row.   In his first

6   appeal, the First Circuit affirmed Cruzado's conviction against challenges to the legal

7   sufficiency of the trial evidence that the Court called "specious," "little more than an

8   implicit admission of guilt and a plea for leniency," and "elevat[ing] coincidence to an art

9   form."   *United States* v. *Cruzado-Laureano*, 404 F.3d 470, 485-86 (1st Cir. 2005)

10  (*Cruzado I*).   The Court remanded the case for resentencing, nonetheless, because we had

11  erroneously followed the Pre-Sentence Report in using the 2000 Sentencing Guidelines,

12  instead of the 2002 Guidelines, to calculate the appropriate sentencing range.[1]  *Id*. at 488-

13  89.   On remand, we used the correct guidelines and then "imposed a sentence identical to

14  the one earlier imposed."   *United States* v. *Cruzado-Laureano*, 440 F.3d 44, 47 (1st Cir.

15  2006) (*Cruzado II*).

16        In his second appeal, Cruzado challenged the resentence, including on grounds

17  that the First Circuit found "simply implausible."   *Id*. at 48 n.9.   In the end, the Court held

---

[1] While his first appeal was pending before the First Circuit, Cruzado petitioned this court for a writ of habeas corpus under 28 U.S.C. § 2255.   (3:03-cv-01867-JAF, ECF No. 1.)   We dismissed the petition without prejudice on the ground that we would "not attempt to sort out section 2255 allegations or collateral attacks to the conviction and sentence" while the case "is awaiting appellate decision."   (*Id.* ECF No. 2.)   Cruzado did not contest that disposition of the petition.   *See United States* v. *Weekes*, 611 F.3d 68, 71 (1st Cir. 2010) ("We have long recognized that 'in the absence of extraordinary circumstances, the orderly administration of criminal justice precludes a district court from considering a § 2255 motion while review of the direct appeal is still pending.'") (quoting *United States* v. *Gordon*, 634 F.2d 638, 638 (1st Cir. 1980)).

1    that we had acted properly in "large part" in imposing the resentence, but had misapplied

2    "two [guidelines] provisions that dealt with [Cruzado's] abuse of his elected office," and

3    so the case was once again remanded for resentencing.  *Id*. at 45.  In sending the case

4    back to us, the Court underscored that it did "not intend to intimate that the length of the

5    sentence should necessarily be changed; what matters is that the premise as to the

6    Guideline range must be correct."  *Id*. at 50.

7              On remand, we corrected the guidelines range and once again imposed the same

8    sentence, including restitution and fine.  *Cruzado III*, 527 F.3d at 234.  But, at that third

9    sentencing proceeding, Cruzado wanted to achieve much more.  In particular, he "sought

10   to present witnesses to prove that he was 'actually innocent,' that he had been subject to

11   malicious prosecution, and that there were no victims of his crime – and hence no need

12   for restitution – because no loss had occurred."  *Id*.  Rather than allow the proceeding to

13   devolve into several mini-trials that would have gone far beyond our mandate, we let

14   Cruzado submit the prepared direct examinations of the nine witnesses he had wanted to

15   call, submit an audit report from the municipality that purportedly disagreed with our

16   specific findings of loss in the restitution order, and submit an outline of the argument he

17   would have made if he had fully questioned all nine witnesses.  *Id*. at 238.  When we

18   permitted Cruzado to call four character witnesses to testify on his behalf, "only two of

19   [them] turned out to know him personally."  *Id*.  Even then, they spoke mostly in

20   platitudes, calling Cruzado a "good citizen" and "person" whose failings, if any, were

21   "perhaps" caused by a "lack of orientation."  *Id*.

1    In his third appeal, the First Circuit affirmed the resentence against Cruzado's

2    usual list of complaints, though not without observing that his continuing "refusal to

3    acknowledge that he [had] committed criminal acts . . . giv[es] relevant insight into his

4    character and rais[es] concerns about his respect for the law and his future conduct." *Id.*

5    at 237.  The entire appellate process took more than six years to complete, finally ending

6    in January 2009, when the United States Supreme Court denied Cruzado's petition for a

7    writ of certiorari on his third appeal.  *See Cruzado-Laureano* v. *United States*, 555 U.S.

8    1099 (2009).  Unfortunately, this does not come close to narrating the full history of

9    plaintive litigation that Cruzado's underlying conviction has spawned.

10    In this District Court alone, Cruzado has sued multiple people, governments, and

11    organizations over the fact that he was ever suspected of criminal conduct, let alone

12    prosecuted and convicted of it.  For example, in May 2006, Cruzado filed suit against the

13    Commonwealth of Puerto Rico, the former Governor and the former Secretary of Justice

14    of the Commonwealth, the political party of the former Governor and Secretary (i.e., the

15    Partido Popular Democrático), the former Secretary of the political party, and a local

16    special prosecutor who had been appointed to investigate Cruzado, seeking damages from

17    them for "malicious prosecution" because they had, among other things, "contemplated

18    bringing charges against [him]," which, he claimed, "adversely affected the outcome of

19    [his 2002] trial before the United States District Court for the District of Puerto Rico,

20    Case No. 01-690 (JAF)."[2]  (3:06-cv-01471-ADC, ECF No. 1 ¶¶ 1, 12-13.)  Now Chief

21    Judge Aida M. Delgado-Colón ultimately dismissed the case with prejudice for failing to

_____

[2] This was the federal trial that resulted in Cruzado's underlying judgment of conviction.

1   state a claim upon which relief could be granted.  (3:06-cv-01471-ADC, ECF Nos. 67,

2   71.)

3          In May 2006, Cruzado also filed suit against the United States of America, the

4   former United States Attorney for the District of Puerto Rico, several federal prosecutors

5   and law-enforcement agents who had worked on the case that led to his underlying

6   conviction, and many of the same Commonwealth officers and institutions he had sued in

7   the case pending before Chief Judge Delgado-Colón, seeking damages from them for

8   "malicious prosecution" because they had, among other things, "acted maliciously in

9   instigating the criminal prosecution in that part of their motives was to create the

10  impression that they were fighting corruption, to better their public images, and in the

11  process, [to] inflict upon [Cruzado] as much punishment as possible."  (3:06-cv-01471-

12  ADC, ECF No. 1 ¶¶ 1, 17.)  We dismissed the case for failing to state a claim upon which

13  relief could be granted. (3:06-cv-01472-JAF, ECF No. 1 ¶ 40.)  Cruzado moved the court

14  to reconsider the dismissal, but we denied the motion as meritless.  (*Id.* at ECF Nos. 45,

15  49.)

16         In February 2007, while the above motion to reconsider was pending, Cruzado

17  once again filed suit against many of the same federal and Commonwealth parties from

18  his May 2006 cases, seeking damages yet again for malicious prosecution on virtually the

19  same grounds as before.  (3:07-cv-01160-JP, ECF No. 1.)  Judge Jaime Pieras, Jr.,

20  dismissed the case with prejudice on res-judicata grounds because he had found that

21  Cruzado's new complaint was "identical" to the complaint in the malicious-prosecution

1   case we had just dismissed.  (3:07-cv-01160-JP, ECF Nos. 23-24.)  The First Circuit

2   summarily affirmed the decision.  (*Id.* at ECF No. 38.)

3        In December 2009, on the day after his term of supervised release had expired,

4   Cruzado filed a petition with the court, substantially similar to the one now under review,

5   seeking a writ of error coram nobis under 28 U.S.C. § 1651(a).[3]  (3:09-cv-02303-JAF,

6   ECF No. 1.)  We ultimately denied the petition on the ground that Cruzado had failed to

7   allege any "significant, continuing collateral consequences flowing from his conviction"

8   that might warrant relief.  (3:09-cv-02303-JAF, ECF No. 31 at 5.)  In fact, Cruzado had

9   "failed to allege any collateral consequences separate from his conviction and financial

10  obligation."  (*Id.* at ECF No. 31 at 8.)  At the end of our opinion announcing the denial,

11  we observed that, more than eight years after his conviction, Cruzado has "continue[d] to

12  waste judicial resources [by] bringing frivolous arguments."  (*Id.* at ECF No. 31 at 9.)

13  We warned Cruzado that he had "horsed around long enough" and that the court

14  possessed "discretionary powers to regulate the conduct of abusive litigants," including

15  the power to enjoin him from filing more "frivolous and vexatious motions" related to his

16  2002 conviction.  (*Id.* at ECF No. 31 at 9.)  The First Circuit then affirmed our denial of

17  coram-nobis relief.  (*Id.* at ECF No. 39.)

18       In May 2012, Cruzado sued the Commonwealth of Puerto Rico yet again, alleging

19  that the Commonwealth had violated the constitutional prohibition on bills of attainder

20  and ex-post-facto laws and had violated his equal-protection and free-speech rights by

---

[3] In the petition, which was filed on December 31, 2009, Cruzado alleged that he was "due to complete his term of supervised release" that same day.  (3:09-cv-02303-JAF, ECF No. 1 at 2.)  In our order and opinion denying the petition, we found that Cruzado's supervised release had actually "expired on December 30, 2009."  (*Id.* at ECF No. 31 at 2.)  Cruzado has not challenged that finding.

1   enacting a law that prohibited, from elected public office, anyone previously convicted of

2   a crime of moral turpitude.  (3:12-cv-01317-CCC, ECF Nos. 1 ¶¶ 1, 3, 7-8, 11, 15; 1-1.)

3   Cruzado claimed that the law "was enacted in order to forbid [him] from running for

4   Mayor of Vega Alta" again.  (*Id.* at ECF No. 1 ¶ 10.)  Cruzado then moved the court to

5   let him proceed in forma pauperis, but Judge Carmen Consuelo Cerezo denied the motion

6   under 28 U.S.C. § 1915(e)(2)(B)(i), on the ground that Cruzado's claims were

7   "frivolous."  (*Id.* at ECF Nos. 3, 10.)   Judge Cerezo eventually dismissed the case

8   because of Cruzado's failure to pay the filing fee.  (*Id.* at ECF No. 11.)  The First Circuit

9   affirmed the dismissal, finding "no error in the court's determination that the complaint

10  was frivolous." (*Id.* at ECF No. 19 at 2.)

11          Cruzado now returns before this court with a new petition for a writ of error coram

12  nobis.  (ECF No. 1.)   In the petition, Cruzado largely repeats the claims that he first

13  presented to the court at his third sentencing proceeding in April 2006, and then reiterated

14  in his first coram-nobis petition in December 2009.  Beyond the passage of years, perhaps

15  the only thing that distinguishes Cruzado's present request for relief from his earlier ones

16  is his recitation of "the collateral consequences of his conviction" that, he claims, warrant

17  the court's reconsideration of a judgment that has long been final.  (ECF No. 1 at 2.)

18          "[C]oram nobis is an extraordinary remedy, which is available 'only under

19  circumstances compelling such action to achieve justice.'"  *Murray* v. *United States*, 704

20  F.3d 23, 28 (1st Cir. 2013) (quoting *United States* v. *Morgan*, 346 U.S. 502, 511 (1954)).

21  "It is meant to correct errors 'of the most fundamental character; that is, such as render[]

22  the proceeding itself irregular and invalid.'"  *Id.* (quoting *United States* v. *Mayer*, 235

1   U.S. 55, 69 (1914)) (alteration in original).  The First Circuit "has adopted a three-part

2   test to determine whether a petitioner is eligible for coram nobis relief, along with a

3   fourth part that addresses whether relief should actually be granted."  *Id.* at 29.  "To

4   establish eligibility, the petitioner must first adequately explain his failure to seek relief

5   earlier through other means; second, he must show that he continues to suffer a

6   significant collateral consequence from the judgment being challenged and that issuance

7   of the writ will eliminate this consequence; and third, he must demonstrate that the

8   judgment resulted from a fundamental error."  *Id*.  "The petitioner bears the burden of

9   persuasion on all three steps."  *Id*.  "Even if the petitioner meets all three of the

10  conditions in the coram nobis eligibility test, the court retains discretion to grant or deny

11  the writ, depending on the facts and circumstances of the individual case."  *Id.* at 29-30.

12  In other words, "[s]atisfying the three-part test 'is a necessary, but not a sufficient,

13  condition for the issuance of the writ.'"  *Id.* at 30 (quoting *George*, 676 F.3d at 255).

14  After all, "the extraordinary nature of the writs implies that they should be issued

15  sparingly," and "successful petitions for coram nobis are hen's-teeth rare."  *George*, 676

16  F.3d at 253-54; *see also Carlisle* v. *United States*, 517 U.S. 416, 429 (1996) ("it is

17  difficult to conceive of a situation in a federal criminal case today where [a writ of coram

18  nobis] would be necessary or appropriate") (alteration in original) (quoting *United States*

19  v. *Smith*, 331 U.S. 469, 475 n.4 (1947)).  Applying this test to Cruzado's petition, the

20  court finds that the petition must be denied.

21          Cruzado fails to mention, let alone adequately explain, why he did not seek relief

22  earlier through more appropriate means.  Although Cruzado did raise claims that were

1    similar to, if not the same as, his current ones at his third sentencing proceeding and in

2    his first coram-nobis petition, he never sought review of these claims in a proper habeas

3    petition.  This particular oversight is quite glaring because "[t]he writ of habeas corpus

4    historically has served as the principal vehicle for testing the legality of executive

5    detentions." *Trenkler* v. *United States*, 536 F.3d 85, 96 (1st Cir. 2008).  Cruzado had

6    virtually the entire year of 2009 – from the judgment of conviction becoming final on

7    January 12, 2009, until the expiration of his supervised-release term on December 30,

8    2009 – to file a timely habeas petition under 28 U.S.C. § 2255.  *See Butterworth* v.

9    *United States*, 775 F.3d 459, 468 (1st Cir. 2015) ("a conviction becomes final – and the

10   one-year period therefore starts to run – for purposes of § 2255(f)(1) when a petition for

11   certiorari is denied") (quoting *In re Smith*, 436 F.3d 9, 10 (1st Cir. 2006)); *Francis* v.

12   *Maloney*, 798 F.3d 33, 37 (1st Cir. 2015) ("an individual serving a supervised release

13   term satisfies the 'in custody' requirement" of § 2255(a)).  Instead, he inexplicably

14   waited until the day after his release from custody to raise these claims in his first coram-

15   nobis petition.  (*See* 3:09-cv-02303-JAF, ECF No. 1 at 1 n.1.)  It is doubtful that an

16   adequate explanation of this oversight or delay even exists.[4]

_____

[4] Cruzado's first coram-nobis petition, like almost every other filing by him in his decade-plus long march through federal court to protest the underlying conviction, was drafted and submitted by his long-time professional counsel, Alexander Zeno, Esq.  (*See* 3:09-cv-02303-JAF, ECF No. 1 at 9.)  Zeno has shown himself to be a most unusual attorney, and Cruzado, a most unusual client.  For years now, Zeno has been pushing the claim that Cruzado's conviction should be overturned because Zeno rendered him ineffective assistance of counsel on his second appeal.  (*See id.* at ECF No. 1 at 7; ECF No. 1 at 9-10.)  Meanwhile, Cruzado has continued to retain Zeno, and Zeno has continued to represent Cruzado, even after Cruzado swore, under penalty of perjury in 2012, that he was destitute and had to litigate a case in forma pauperis, having no income except for $673.00 in annual Social Security benefits, only $117.00 in the bank, and no other assets to speak of.  (3:12-cv-01317-CCC, ECF Nos. 3; 3-1.)  In the past, Zeno has been suspended from the practice of law before this District Court because of his "chronic tendency" to submit filings that include "intemperate and unsubstantiated allegations that various [people] were

1    In any event, Cruzado "may not now resort to coram nobis relief to avoid § 2255's

2    deadlines." *Barreto-Barreto* v. *United States*, 551 F.3d 95, 103 (1st Cir. 2008).  Again,

3    he has "failed to demonstrate that [a] § 2255 petition[] could not have been brought

4    within the one-year limitations period." *Id*.  And, it appears that he is now seeking coram

5    nobis, instead of habeas, relief "merely because he has failed to meet the AEDPA's

6    gatekeeping requirements." *Id*. (quoting *Matus-Leva* v. *United States*, 287 F.3d 758, 761

7    [9th Cir. 2002]).  To give Cruzado access to coram-nobis relief under these circumstances

8    "would reduce AEDPA's gatekeeping provisions to a meaningless gesture." *Id*. (quoting

9    *Trenkler*, 536 F.3d at 99) (internal quotations omitted).  Moreover, Cruzado may not use

10   the fact that he is "no longer in custody" and thus ineligible to file a § 2255 petition as a

11   reason to allow him to apply for coram-nobis relief instead.  *See id*.

12   Cruzado also fails to show that he suffers from significant collateral consequences

13   of the conviction.  In the petition, he asserts six alleged consequences: An obligation to

14   pay the restitution and fine, disqualification from jury service, disqualification from gun

15   ownership, disqualification from elected public office in Puerto Rico, and disqualification

16   from serving as representative payee of his disabled brother's Social Security benefits.

17   (ECF No. 1 at 2-3.)  But, aside from his continuing obligation to pay the restitution and

18   fine (which is self-evident because the judgment of conviction still stands),[5] Cruzado

19   barely attempts to show that he will continue to suffer from any of those consequences.

---

guilty of, *inter alia*, dishonesty, partiality, stupidity, or possible criminality."  *In re Zeno*, 504 F.3d 64, 66
(1stf Cir. 2007).  Shadings of that well-established tendency crop up throughout the new petition.

[5] As was explained in our opinion denying Cruzado's first coram-nobis petition, the obligation to
pay a restitution and fine does not represent a significant collateral consequence of conviction.  (3:09-cv-

1    For example, a person is disqualified from federal jury service because of a felony

2    conviction only if "his civil rights have not been restored."   28 U.S.C. § 1865(b)(5).

3    Similarly, a convicted felon is disqualified, under federal law, from possessing a firearm

4    only if he has not "had [his] civil rights restored."   18 U.S.C. §§ 921(a)(20), 922(g)(1).

5    Whether Cruzado can have his civil rights restored is "a complicated question" that

6    "involves the interpretation of the federal law relating to federal civil rights."   *Beecham* v.

7    *United States*, 511 U.S. 368, 373 n. (1994).   And, it is a question that Cruzado must

8    answer.   This court will not blithely assume that a collateral consequence is so substantial

9    as to justify coram-nobis relief when the very statutes imposing the consequence mention

10   an exception for those who have had their civil rights restored.   That is especially true

11   when Cruzado, who bears the burden of persuasion here, does not even attempt to show

12   that restoration is unavailable to him.   Under such circumstances, "the possibility of

13   harm" from the alleged consequences remains "only speculative" and, thus, does not

14   constitute the kind of "civil disabilit[y] that would justify issuance of the writ."   *See*

15   *United States* v. *Craig*, 907 F.2d 653, 659 (7th Cir. 1990).

16        Cruzado fares slightly better with his disqualification, under Puerto Rico law, from

17   elected public office because it is utterly clear that the crimes for which he was convicted

18   "impl[y] moral turpitude."   *See* 21 L.P.R.A. § 4101(e) (setting forth the qualifications for

19   "[e]very candidate for mayor"); *see also Cruzado I*, 404 F.3d at 473-79 (setting forth in

20   great detail "the particulars of [Cruzado's] criminal activity" as mayor).   In the end,

---

02303-JAF, ECF No. 31 at 5-8.)  That holding constituted the sole basis for denying the petition, and the First Circuit later affirmed the denial.  (*Id.* at ECF No. 39.)

1    however, this disqualification cannot serve as a continuing collateral consequence either.

2    That is because Cruzado has not "shown that the court's decree will eliminate the claimed

3    collateral consequence and bring about the relief sought." *See George*, 676 F.3d at 256

4    n.3. After all, even if his conviction was vacated, Cruzado would still be barred from

5    elected office in Puerto Rico because he was "removed" from his mayoralty in late 2001

6    "for misconduct in the performance of his/her duties." *See* 21 L.P.R.A. § 4101(f) (listing

7    an adequate and independent ground of disqualification); *see also Cruzado I*, 404 F.3d at

8    478 (noting that Cruzado was removed from public office following his arrest on

9    October 24, 2001, for crimes related to his abuse of the mayoralty).[6]

10        The only other collateral consequence that Cruzado cites is his alleged inability to

11   serve as representative payee of the Social Security benefits of his disabled brother

12   Wilfredo. Interestingly, this is the only collateral consequence whose existence Cruzado

13   actually attempts to prove. Unfortunately for him, his proof fails spectacularly. Cruzado

14   has appended to the petition a check for $378.00 in Social Security benefits from the

15   United States Treasury. (ECF No. 1-3.) The check is made out to "Juan Cruzado

16   Laureano for Wilfredo Cruzado Laureano," indicating that Cruzado had successfully

17   petitioned the Social Security Administration ("SSA") to become representative payee of

---

[6] On November 17, 2015, the court received in chambers a DVD from Cruzado, bearing a Vega Alta, Puerto Rico, postmark, dated November 10, 2015. The DVD contains a video in which Cruzado speaks at length to the camera, pleading that he must be allowed to run again for the mayoralty of Vega Alta because, once back in office, he will expose the people behind a series of allegedly illegally-obtained municipal contracts that, he asserts, no one else cares to reveal. Of course, if these illegal contracts actually exist, nothing bars Cruzado from acting as a whistleblower right now. It is simply ludicrous for Cruzado to argue that he must first be reelected to the seat of his corruption – itself, a speculative possibility – for him to expose the alleged corruption of others. The delivery of this DVD may have been an attempt to communicate with the court ex parte.

1   his brother Wilfredo's benefits checks.  (ECF No. 1-3.)  According to a note from the

2   SSA, this particular check was issued on March 31, 2015.  (ECF No. 1-2.)

3         Now, Cruzado also appended to the petition an acknowledgement from the SSA,

4   dated March 23, 2015, that it had received his application to become representative

5   payee.  (ECF No. 1-4.)  The problem is that, in the SSA application, Cruzado declares,

6   under penalty of perjury, that he has "never been convicted of a felony," nor "been

7   imprisoned for more than one year."  (ECF No. 1-4 at 1-2.)  Cruzado admits that those

8   declarations are pure lies.  Indeed, he claims that he "could not" make those declarations

9   "under oath."  (ECF No. 1 at 3.)  And yet, he did.  He even supplied the court with the

10  proof.  (*See* ECF No. 1-4 at 1.)

11        The court is aghast by the brazenness of Cruzado's apparent conduct.  His SSA

12  application appears to have been submitted.  In the copy of the application that Cruzado

13  appended to the petition, the SSA tells him, "We are returning the attached application

14  you submitted to us requesting to be payee for WILFREDO CRUZADO LAUREANO

15  for your records" because "[w]e stored the information you submitted with this request

16  electronically so there is no reason for us to retain a paper copy."  (ECF No. 1-4 at 2.)

17  The SSA then reminds Cruzado that "[y]ou declared under penalty of perjury that you

18  examined all the information on your request and it is true and correct to the best of your

19  knowledge," and that "[y]ou were told that you could be held liable under law for

20  providing false statements."  (ECF No. 1-4 at 2.)  Eight days after the SSA acknowledged

21  receipt of the application, the SSA issued the benefits check to "Juan Cruzado Laureano

22  for Wilfredo Cruzado Laureano."  (ECF No. 1-3.)  This shows one of two things: Either

1    Cruzado committed perjury to become that check's payee, or a prior felony conviction

2    and prison time are not actually disqualifications from serving as representative payee.

3          Indeed, other than his say-so, Cruzado does not adduce any evidence that his

4    conviction has disqualified him from being representative payee.  (*See* ECF No. 1 at 3

5    n.3.)  That may be because his conviction does not constitute a categorical bar.  Under the

6    Social Security Act, a person convicted of a felony offense can still serve as a

7    representative payee if "the Commissioner determines that the payment would be

8    appropriate notwithstanding the conviction."  42 U.S.C. § 1383(a)(2)(B)(iii)(IV).  Of

9    course, if the Commissioner were to find that Cruzado is not an appropriate payee, the

10    reason behind the decision would be, by definition, something about Cruzado aside from

11    his conviction.  Like his claims of disqualification from jury service and gun ownership,

12    Cruzado may not complain that a disqualification represents a continuing collateral

13    consequence when the very statute that creates disqualification includes a possible

14    exemption, thereby rendering the possibility of continued disqualification only

15    speculative.  *See Craig*, 907 F.2d at 659.

16          Cruzado has also failed to demonstrate that the underlying judgment resulted from

17    any error, let alone a fundamental one.  "The standard for determining whether an error is

18    fundamental is not precisely defined, but because coram nobis 'lies at the far end of [the]

19    continuum' of methods for challenging a judgment, it is a high standard."  *Murray*, 704

20    F.3d at 29 (quoting *George*, 676 F.3d at 258).  Here, Cruzado alleges only four run-of-

21    the-mill errors, none of which are convincing.  (*See* ECF No. 1 at 3-10.)

1     First, Cruzado faults his trial attorney for not moving to suppress "all [of the]

2     information obtained" during the federal government's "whole investigation" of him.

3     (ECF No. 1 at 4.)  According to Cruzado, the government's investigation started when an

4     FBI agent "obtained from Banco Popular de Puerto Rico . . . copies of some checks that

5     were issued by Mrs. Lilly Alonso payable to [him]" in violation of the Right to Financial

6     Privacy Act, 12 U.S.C. §§ 3401 *et seq*. ("the Act").  (ECF No. 1 at 3-4.)  Cruzado opines

7     that "since the information obtained from these checks was what gave basis for [an FBI]

8     interview of Mrs. Alonso and from there to investigate the rest of the case," all of the

9     government's evidence was fruit of that allegedly poisonous tree.  (ECF No. 1 at 4-5.)

10    But, even assuming a violation of the Act and a causal relationship between the assumed

11    violation and all of the government's proof, Cruzado's claim is unavailing.  That is

12    because suppression is not an authorized remedy under the Act; only civil penalties and

13    injunctive relief are.  *See* 12 U.S.C. §§ 3417, 3418.  And, the Act specifically provides

14    that "[t]he remedies and sanctions described in this title shall be the only authorized

15    judicial remedies and sanctions for violations of this title."  12 U.S.C. § 3417(d); *see also*

16    *United States* v. *Frazin*, 780 F.2d 1461, 1466 (9th Cir. 1986) ("Although Congress did

17    not explicitly address the availability of a suppression remedy during its consideration of

18    the Act, we find that remedy to be excluded under section 3417(d).")  Thus, Cruzado's

19    trial attorney did not err by failing to file a meritless suppression motion.

20    Next, despite his conviction by an impartial jury of five counts of extortion, five

21    counts of money laundering, one count of embezzlement, and one count of witness

22    tampering, Cruzado lambastes the United States Attorney for "prosecut[ing] a case

1   which," he alleges, "did not warrant prosecution," did not have "probable cause," and

2   was "fabricat[ed]" by a conspiracy of prosecutors and law-enforcement agents.  (ECF

3   No. 1 at 5-6.)   To substantiate this claim, Cruzado asks the court to convene an

4   evidentiary hearing – which, he is aware, some might "dismiss[] . . . as a fishing

5   expedition" – so that members of the federal prosecutorial and investigative team can "at

6   least state under oath that what [he is] claiming here is not the truth."  (ECF No. 1 at 7.)

7   The court denies this request because, as Cruzado correctly notes, his allegations against

8   the government's proof fundamentally come down to a question of "credibility."  (ECF

9   No. 1 at 7.)   And, "'[c]redibility determinations, the weighing of the evidence, and the

10  drawing of legitimate inferences from the facts' [are] all tasks for the jury, not the judge."

11  *Garcia-Gonzalez* v. *Puig-Morales*, 761 F.3d 81, 99 (1st Cir. 2014) (quoting *Anderson* v.

12  *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)); *see also United States* v. *Munyenyezi*,

13  781 F.3d 532, 538 (1st Cir. 2015).  Again, it was the jury that convicted Cruzado of all

14  twelve counts.  Accordingly, this claim of error fails as well.

15       Next, Cruzado alleges that the prosecution secured his conviction by "obscur[ing]

16  the true facts" and "confusing" the jury, and that his trial attorney thus provided him with

17  ineffective assistance by failing to adduce sufficient evidence to "clarify[] the true facts

18  to the jury."  (ECF No. 1 at 8.)  For example, Cruzado claims that his trial attorney could

19  have called the "Finance Director of the Municipality of Vega Alta" to testify "that the

20  records of the Municipality of Vega Alta showed no type of embezzlement and/or theft

21  during the period covered by the [criminal charges]."  (ECF No. 1 at 9.)  Cruzado also

22  claims that his trial attorney should have argued that some of the money he was convicted

1    of embezzling, extorting or laundering had "no restrictions on [its] use," as if to suggest

2    that the money was free for the taking.  (ECF No. 1 at 8.)  These claims "simply amount

3    to 'Monday morning quarterbacking of trial tactics,' which is insufficient to sustain an

4    ineffective assistance of counsel claim."  *United States* v. *Valerio*, 676 F.3d 237, 248 (1st

5    Cir. 2012) (quoting *United States* v. *Thomann*, 609 F.2d 560, 566 (1st Cir. 1979)).

6            Finally, Cruzado's lawyer falls on his sword, issuing a brief mea culpa about how

7    he failed Cruzado during the second appeal by waiving Cruzado's challenge to the non-

8    incarcerating aspects of his sentence.  (ECF No. 1 at 9-10.)  But that was hardly an

9    example of ineffective assistance because there was no real challenge to bring.  As the

10   First Circuit later noted, "the fine imposed, $10,000, was the lowest point of a range that

11   went up to $500,000," and "[t]he restitution order was based on specific findings of loss."

12   *Cruzado III*, 527 F.3d at 235.  Granted, the terms of supervised release – three years on

13   each of the eleven Class C felony convictions, and one year on the class E felony

14   conviction, to be served concurrently (3:01-cr-00690-JAF-1, ECF No. 248 at 3) – were

15   the maximum authorized by law.  *See* 18 U.S.C. § 3583(b).  But, determining the

16   appropriate amount of supervised release "is an exercise committed to the sound

17   discretion of the district court," and Cruzado does not even gesture at an argument for

18   overturning this aspect of the sentence.  *United States* v. *Morales*, 801 F.3d 1, 11 n.6 (1st

19   Cir. 2015).  Accordingly, Cruzado has once again failed to prove error, let alone a

20   fundamental one.

21           As we observed at the very beginning, Cruzado's modus operandi throughout his

22   years of challenging the underlying conviction has been one ill-suited to success before a

1   federal court: "If at first you don't succeed, try, try again."  *See In re Moncier*, 488 Fed.

2   Appx. at 60.  Because this petition represents Cruzado's second Hail Mary pass toward

3   his longstanding goal of vacating his now thirteen-year-old conviction, the court wants to

4   be clear that even if he had satisfied all three conditions of the coram-nobis eligibility

5   test, we still would have denied him the writ based on the particular facts of his case.  *See*

6   *Murray*, 704 F.3d at 29-30.  In the end, Cruzado's frequent challenges to his conviction

7   come down to a hoarse cry of innocence and belabored finger-pointing.  These challenges

8   ignore how Cruzado's guilt as to all twelve counts of conviction was proven at trial by

9   overwhelming evidence.  *See Cruzado I*, 404 F.3d at 473-88.  To this day, as his latest

10  petition makes clear, Cruzado cannot stomach the fact that he was caught, convicted, and

11  sentenced.  He has repeatedly sued people at all levels of government service, from the

12  former Governor of Puerto Rico down to a line assistant in the United States Attorney's

13  Office, out of a mistaken sense that he is the true victim here, instead of the People of the

14  United States of America, the residents of Vega Alta, and the many individuals he either

15  coerced or defrauded during his year-long mission to turn his mayoralty into a private

16  profiteering enterprise.  The First Circuit was most assuredly correct when it found that

17  Cruzado's continuing "refusal to acknowledge that he [had] committed criminal acts . . .

18  giv[es] relevant insight into his character and rais[es] concerns about his respect for the

19  law and his future conduct."  527 F.3d at 237.

20         This is not one of those "hen's-teeth rare" cases in which the "extraordinary

21  remedy" of issuing a writ of error coram nobis is necessary to "achieve justice."  *George*,

Civil No. 3:15-CV-01930 (JAF)                                                          -19-

1   676 F.3d at 253-54 (quoting *Morgan*, 346 U.S. at 511).  Simply put, the court will not

2   exercise its discretion to issue the writ in this case.[7]

3          In sum, the court finds that Cruzado's petition for a writ of error coram nobis must

4   be **DENIED**.  (*See* ECF No. 1.)  Judgment will enter dismissing the present petition with

5   prejudice.

6          **IT IS SO ORDERED.**

7          San Juan, Puerto Rico, this 30th day of November, 2015.

8                                                      S/José Antonio Fusté
9                                                      JOSE ANTONIO FUSTE
10                                                     U. S. DISTRICT JUDGE

---

[7] The court's denial of the petition prior to the filing of a response by the government follows the procedure set forth in Rule 4(b) of the Rules Governing Section 2255 Cases in the United States District Courts. The court has found that Cruzado is not entitled to coram-nobis relief as a matter of both eligibility and, assuming eligibility, discretion.  Rule 4(b) is the procedure to follow if one were to treat this case as a section 2255 petition. The standard of Rule 4(b) seems appropriate for this kind of filing under its particular circumstances.